**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PAMELA CASSO, | ) | |
| on behalf of plaintiff and a class, | ) | |
| | ) | |
| Plaintiff, | ) | Judge John W. Darrah |
| | ) | |
| v. | ) | Case No. 12-cv-7328 |
| | ) | |
| LVNV FUNDING, LLC; | ) | |
| RESURGENT CAPITAL SERVICES LP; | ) | |
| and ALEGIS GROUP LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT**

LVNV Funding, LLC ("LVNV") is a debt buyer. Resurgent Capital Services LP (Resurgent"), its affiliate, takes or directs all actions on behalf of LVNV. LVNV filed a lawsuit against plaintiff Pamela Casso in the Circuit Court of Cook County, Illinois. In order to prove the amount of the debt, LVNV submitted a "robosigned" affidavit from Matthew Sowell, an employee of Resurgent.

Plaintiff contends that defendants violated 15 U.S.C. §§1692e, 1692e(2) and 1692e(10) of the Fair Debt Collection Practices Act ("FDCPA") by submitting a false affidavit to the consumer. In particular, defendants submitted an affidavit representing that they have business records to prove the debt, when they do not. They have no documents, and the original creditor (Citibank) disclaims the accuracy of its records and information.

The claim here is remarkably similar to that in *Matmanivong v. Unifund CCR Partners*, 08 CV 6415, 2009 WL 1181529 (N.D. Ill. Apr. 28, 2009), where this Court found that a debt collector's attachment of a false statement to a state-court complaint constituted a false

representation in connection with the collection of a debt in violation of §1692e of the FDCPA. This Court held that the false statement was actionable, even though it was submitted in a state-court proceeding, and that the statement was material.

Similarly, here plaintiff alleges that defendants misrepresent in an affidavit that they have "business records" to prove a debt. In fact, all they have is a line item from a creditor who has disclaimed the accuracy of its records. This is not a business record, and the misrepresentation violates the FDCPA.

That the Complaint accurately describes defendants' practices of using misleading affidavits to support collection complaints is verified by a three-year empirical study of the debt buying industry by the Federal Trade Commission ("FTC"). In January, the FTC issued its report "The Structure and Practice of the Debt Buying Industry."("FTC Report")[1]. The FTC Report supports the complaint's factual assertions regarding debt buyer practices.

## I.    FACTS

This action concerns attempts by defendants to collect a credit card debt from plaintiff. Amended Complaint ("AC"), ¶29. The debt was allegedly assigned to LVNV by the original creditor, Citibank. AC., ¶29. LVNV has no employees. All actions taken in the name of LVNV are in fact taken by Resurgent. AC.,¶¶22,23.

LVNV filed a collection action against plaintiff in the Circuit Court of Cook County. AC, ¶30. In order to prove the debt, LVNV submitted an affidavit from Matthew Sowell, an employee of Resurgent. AC, ¶¶32-35. The affidavit [AC Appendix ("App.") B] states:

1.    I am an Authorized Representative for LVNV Funding LLC (hereafter the

---

[1] Available at http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf.

"Plaintiff"). . . .The information below is true and correct to the best of my information and belief based on the Plaintiff's business records. . . .

2.    ...This information was regularly and contemporaneously maintained during the course of the Plaintiff's business. . .

3.    In the ordinary course of business, Plaintiff regularly acquires revolving credit accounts, installment accounts, service accounts and/or other credit lines. The records provided to Plaintiff have been represented to include information provided by the original creditor or its successors in interest. Such information includes the debtor's name, social security number, account balance, the identity of the original creditor and the account number. . . .

5.    Based upon the business records maintained on account [number]( hereafter "Account"), which are a compilation of the information provided upon acquisition and information obtained since acquisition, the Account is the result of the extension of credit to Pamela Casso by Citibank on or about 4/16/2007 (the "Date of Origination"). Said business records further indicated that the Account was then owned by Citibank, that Citibank later sold and/or assigned Portfolio . . . to Plaintiff's assignor which included the Defendant's Account on 10/22/2009 (the "Date of Assignment') and on the Date of Assignment, all ownership rights were assigned to, transferred to, and became vested in Plaintiff, including the right to collect a purchased balance owing of $2,440.48 plus any additional accrued interest.

These statements are false. Defendants have no "business records" that show that "the Account is the result of the extension of credit to Pamela Casso by Citibank on or about 4/16/2007." AC, ¶37. Defendants have no "business records" that "indicate" that there is a "purchased balance owing of $2,440.48 plus any additional accrued interest." AC, ¶38. Defendants got a list of debts and nothing else. That is why in his affidavit, Sowell does not state what documents he referred to in drafting his Affidavit, nor does he maintain that any investigation was conducted by himself or Resurgent to verify the information. AC, App. B. Sowell did not review any Citibank records prior to signing the Affidavit. AC, ¶34.

Sowell is a "robosigner," i.e. an individual who is designated to execute documents and whose daily activities consist of signing and notarizing documents. He did not review any

3

business records prior to signing the Affidavit.  AC, ¶34.

Defendants had minimal information regarding the debt and knew that the information they have is not trustworthy.  LVNV purchased the purported debt from Citibank.  Defendants purport to acquire Citibank debts pursuant to agreements which disclaim the accuracy of the information provided.

Citibank's standard agreement for the sale of receivables states, "Representations Concerning Accounts," that "With respect to each Account, the Bank represents that to the best of its knowledge as of the Cut-Off Date: . . . (i) the current balance on the Account is $100 or more."  AC, App. C.  The only remedy for breach of this promise is that for a period of 180 days Citibank has to reimburse the purchase price of the account or buy the account back. AC., App. C, §3.4.  Citibank "makes no other representations or warranties, express or implied, with respect to any of the Accounts other than as specifically set forth in this Section 3.3." AC., App. C.

The debt buyer represents that it "is a sophisticated investor and its bid and decision to purchase the Accounts are based upon its own independent expert evaluations of the nature, validity, collectability, enforceability and value of the Accounts." AC., App. C, §4.3.

The contract further provides:

The Buyer has had sufficient opportunity to complete the independent investigation and examination into the Accounts that Buyer deems necessary. Buyer enters into this Agreement solely on the basis of that investigation and Buyer's own judgment.  Buyer has made an independent determination that the Purchase Price represents the Accounts' fair and reasonable value.  Buyer is not acting in reliance on any representation by the Bank, except those listed in Section 3.3.  Buyer acknowledges and agrees that except for warranties and representations set forth in Section 3.3 of this Agreement, Bank has not and does not represent, warrant or covenant the nature, accuracy, completeness, enforceability or validity of any of the Accounts and supporting documentation provided by Bank to Buyer, and, subject to the terms of this Agreement, all documentation, information, analysis and/or correspondence, if any, which is or may be sold, transferred, assigned and conveyed to Buyer with respect to any and all Accounts is sold, transferred,

4

assigned and conveyed to Buyer on an 'AS IS, WHERE IS' basis, WITH ALL FAULTS.

## II.     DEFENDANTS MADE FALSE REPRESENTATIONS IN CONNECTION WITH COLLECTION OF A DEBT

Plaintiff's FDCPA claim rests solely on the plain language of the FDCPA, which prohibits a debt collector from using "any *false*, deceptive, or misleading representation or means in connection with the collection of any debt" (§1692e), and "[t]he use of any *false representation* or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" (§1692e(10)) (emphasis added). Plaintiff's claim is that defendants made false representations in an affidavit in the course of collecting a debt. The affidavit represents that the affiant, Sowell, had "business records" and reviewed them when he did not. If he reviewed anything, it was only a computerized summary.[2]

Defendants have no obligation to submit an affidavit in connection with the filing of a collection lawsuit. They do it to simplify the entry of a judgment in case the defendant defaults, which frequently occurs. It also has the effect of deterring debtors from defending the collection action.

Defendants assert that the "central defect" in plaintiff's complaint is that she "does not point to a single representation by any Defendant regarding her debt that was false." Def. Mem. at 2. Defendants are wrong.

The Sowell affidavit is a representation that "business records" exist and are accurate. It

_____

[2]     The amount of information that debt buyers obtain is often minimal. A Federal Trade Commission Workshop Report (February 2009), noted (p. 22) that "A leading association of debt buyers, DBA International ("DBA"), acknowledged that it is common for a debt buyer to receive only a computerized summary of the creditor's business records when it purchases a portfolio . . . ."

is false.  The essence of a business record is that it is trustworthy. Fed. R. Evid. 803(6). In the

loan purchase agreement between Citibank and LVNV the only representation that Citibank

makes is that "the current balance on the Account is $100 or more."  AC, App. C.  The only

remedy for breach of this promise is that for a period of 180 days Citibank has to reimburse the

purchase price of the account or buy the account back. AC., App. C, §3.4.  Citibank "makes no

other representations or warranties, express or implied, with respect to any of the Accounts."

The presence of disclaimers and "as is" language in a purchase agreement means that any records

transferred are not "business records."   A statement by the business generating the record that it

cannot be relied upon, but that the debt buyer should make its own investigation, shows lack of

trustworthiness.

    In January, 2013,  the FTC issued a report on "The Structure and Practice of the Debt

Buying Industry."  The FTC Report is the "first large-scale empirical assessment of the debt

buying sector of the collection industry," which the FTC undertook between 2009 and 2012.  FTC

Report at i. The FTC Report arose out of the Commission's "concern that debt collectors,

including debt buyers, may have insufficient or inaccurate information when they collect on

debts, which may result in collectors seeking to recover from the wrong consumer or recover the

wrong amount."  *Id.*   The FTC Report was approved by the four FTC Commissioners.

    The FTC Report, at page C8, characterized the warranty language found in debt loan sale

agreements as "attesting to the mutual understanding between sellers and buyers that debt account

information may be inaccurate or incomplete, and that buyers may be without recourse against

sellers when that was the case."  It is difficult to conceive of circumstances more indicative of

lack of trustworthiness than (a) the refusal of the original creditor to represent that its records are

accurate or (b) the practices alleged here, which are taken as true upon a motion to dismiss.

Defendants repeatedly argue in their memorandum that plaintiff's claim must fall because it is based upon a purchase agreement between Citibank and a different debt buyer. However, plaintiff has specifically alleged, at ¶40 of the Amended Complaint, that the provisions that she relies upon were in the purchase agreement between LVNV and Citibank. The allegations are made on information and belief, which are to be taken as true for purposes of a motion to dismiss, particularly where the information is within defendants' knowledge or control. *Martin v. Leading Edge Recovery Solutions, LLC*, 11 C 5886, 2012 WL 3292838 (N.D. Ill. Aug. 10, 2012). Plaintiff stated in the complaint the basis for her information and belief, namely, that Citibank has a standard agreement, and attached a standard agreement. Since defendants have access to the actual agreement, if it differed in any material respects from the document attached to the Amended Complaint, they could have attached it and turned this motion to dismiss into a motion for summary judgment.

Further, the FTC Report states at pp. 24-25 "Although debt sellers and debt buyers are both parties to purchase and sale agreements, sellers generally appear to draft them. Each debt buyer in the study submitted purchase and sale agreements with a variety of structures, organization, and phrasing. Where different debt buyers entered into purchase and sale agreements with the same seller, however, the structure, organization, and phrasing of these agreements were virtually identical." Thus, plaintiff here has adequately plead the terms of the purchase and sale agreement between Citibank and LVNV by attaching an agreement between Citibank and a different debt buyer which contains Citibank's standard terms.

Defendants assert that plaintiff's claim must fail because "the Affidavit comports with the

terms of the Purchase Agreement and is in no way false, deceptive, or misleading." Def. Mem. at 11. In support of this assertion, defendants argue that the provision in the purchase agreement that states that the "current balance on the account is $100 or more" is a guarantee that the debts in the portfolio are more than a threshold amount. Def. Mem. at 12. The problem with this analysis is that it ignores the fact that most of the debts in a portfolio are likely much more than $100 (plaintiff was dunned for $2440.48) and as pled in the complaint (AC ¶¶ 37, 38) and shown in the FTC Report (p. iii), the debt buyer does not have meaningful access to documents that verify the amounts alleged.

Defendants then argue that the "as is" provision in the purchase agreement is modified by the phrase "subject to the terms of the agreement," which defendants characterize as "a long list of representations and warranties." Def. Mem. at 12. That long list, as described by defendants, is "the amount of each debt and the fact that the debt has not been satisfied." Def. Mem. at 12-13. That is– the debt is at least $100, we make no other warranties, and if you have a problem, you can get your money back if you act within 180 days. That is not a basis to swear that the debtor owes $2440.48.

Defendants cite *McMillan v. Collections Professionals, Inc.*, 455 F.3d 754 (7th Cir. 2006) and *Taylor v. Cavalry Investment, LLC*, 365 F.3d 572 (7th Cir. 2004) for the proposition that "a section 1692e claim is subject to dismissal when it is apparent from reading the communication that it is not materially false, misleading or deceptive." Def. Mem. at 11. However, the complaint here does not rely solely on a reading of the Sowell affidavit to assert that the affidavit is false. Plaintiff has pled in detail facts that demonstrate why the affidavit is false. Plaintiff's claims ought not be dismissed based upon a reading of the affidavit alone. Indeed, defendants cut

short the quote from *McMillan*, for the Court goes on to state, "In most instances, however, a proper application of the rule will require that the plaintiff be given an opportunity to demonstrate that his allegations are supported by a factual basis responsive to the statutory standard." 365 F. 3d at 760. Further, the *McMillan* Court sustained the 1692e claim.

Although the *Taylor* Court affirmed the dismissal of the 1692e claim based upon the Court's reading of the letter, the Court did state that the lower Court had erred by dismissing the claim without considering the plaintiff's proof. 365 F.3d at 576.

## III.   PLAINTIFF <u>DOES</u> DISPUTE THE CONCLUSIONS IN SOWELL'S AFFIDAVIT

Contrary to defendants' assertions at pages 2, 5, 7, and 9 of their motion, plaintiff **does** dispute the conclusions in Sowell's Affidavit with respect to the account; whether, when, and by whom it was incurred, as well as what the principal, interest, and balance owed was.

The possibility that the consumer does not owe the debt or that the amount is incorrect or that the debt buyer cannot substantiate its claim is very real.

In connection with the issuance of the FTC Report on debt buyers, the FTC issued orders to produce documents to the nine largest debt buyers in the United States, which accounts for 76% of accounts for debt sold. FTC Report at 7. During the three-year study, the FTC analyzed data on 90 million consumers. Although the Commission did not obtain information from all debt buyers, such as LVNV, its experience is that the debt buyers it did not study are the "source of significant consumer protection problems." FTC Report at 8.

Based upon its study, the Commission found:

- Buyers receive few underlying documents about debts. FTC Report at iii.
- Limits are placed on debt buyer access to account documents. *Id.*

9

- Availability of documents is not guaranteed. *Id.*
- Creditors have no obligation to provide documents on resold debt. *Id.*
- Accuracy of information provided about debt at the time of sale is not guaranteed. *Id.*
- Accuracy of Information in sellers' documents is not guaranteed. *Id.*

The quality of information that debt buyers obtain is often extremely poor. In another

FTC report, "Collecting Consumer Debts: The Challenges of Change: A Federal Trade

Commission Workshop Report" (February 2009)[3], pp. iii-iv, states:

> The FTC believes that there are currently two major problems in the flow of information in the debt collection system. The first major problem is that debt collectors have inadequate information when they seek to collect from consumers. This increases the likelihood that collectors will reach the incorrect consumer, try to collect the wrong amount, or both. . . .
>
> A related information problem is that the limited information debt collectors obtain in verifying debts is unlikely to dissuade them from continuing their attempts to collect from the wrong consumer or the wrong amount. If a consumer disputes a debt, the collector is required to obtain verification of the debt and provide it to the consumer before renewing its collection efforts. Many collectors currently do little more to verify debts than confirm that their information accurately reflects what they received from the creditor. This is not likely to reveal whether collectors are trying to collect from the wrong consumer or collect the wrong amount. The FTC therefore concludes that collectors need to do more to increase the likelihood that the information they acquire during the verification process will correct errors. . . . .

Furthermore, in the debt buyer industry, debts are frequently sold from one debt buyer to

another, and disputes frequently arise as to who is the actual owner. A collection court judge

recorded his personal observation that in many collection cases, the debtor may owe a debt, but

not to that debt buyer. *Chase Bank USA, N.A. v. Cardello*, 2010 NY Slip Op. 20090, 27 Misc. 3d

791, 896 N.Y.S.2d 856, 857, 2010 N.Y. Misc. LEXIS 513, 243 N.Y.L.J. 48 (Richmond Co. Civ.

Ct. 2010) ("[O]n a regular basis this court encounters defendants being sued on the same debt by

---

[3] Available at http://www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf.

more than one creditor alleging they are the assignee of the original credit card obligation. Often these consumers have already entered into stipulations to pay off the outstanding balance due the credit card issuer and find themselves filing an order to show cause to vacate a default judgment from an unknown debt purchaser for the same obligation.")

In *Wood v. M&J Recovery LLC,* No. CV 05-5564, 2007 U.S.Dist. LEXIS 24157 (E.D.N.Y. Apr. 2, 2007), a debtor complained of multiple collection efforts by various debt buyers and collectors on the same debt, and the defendants asserted claims against one another disputing the ownership of the portfolio involved. In *Webb v. Midland Credit Mgmt.*, No. 11 C 5111, 2012 U.S. Dist. LEXIS 80006, 2012 WL 2022013 (N.D.Ill., May 31, 2012), the Consumer's debt was sold five times.

Defendants cite *Hope v. DuPage Co.*, 738 F.2d 797 (7th Cir. 1984) and *Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411 (7th Cir. 1992) to argue that plaintiff cannot represent a class because she does not allege false statements regarding her debt. The question of plaintiff's suitability as a class representative is more appropriately raised in the context of a motion for class certification rather than a 12(b)(6) motion to dismiss. Suffice it to say, at this point, plaintiff's claims are identical to those of the class, that is, persons who were served with a Sowell affidavit in connection with a collection action. AC ¶ 58. The common question suitable for class treatment is whether the affidavit is false. AC ¶ 61. Plaintiff's facts raise this question.

## IV. PLAINTIFF NEED NOT PROVE THAT SHE DID NOT OWE THE DEBT

Even if plaintiff owed a debt in some amount to someone, it does not disqualify her from

asserting an FDCPA violation. In *Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012), the Seventh

Circuit held that a false statement in a collection letter about the consequences of not paying was

actionable under the FDCPA, even if the plaintiff owed the debt. In fact, the Court treated as a

fact that "In 2005, Jeffrey Lox received medical treatment from Dr. Mark Baylor, and as a result,

he incurred a debt. Lox failed to pay, and so his debt was referred by Dr. Baylor to Creditors

Discount & Audit Company ("CDA"), a debt collection agency." (689 F.3d at 820)  Thus, the

Court did ***not*** require Lox to show that he did not owe any money at all.

Defendants' defense seems to be that they are entitled to lie about having evidence to

support a claim unless the consumer shows that he is not liable in any amount. That proposition

turns the law on its ear.

## V.    SOWELL'S AFFIDAVIT WAS COMMUNICATED TO PLAINTIFF AS WELL AS THE COURT

Defendants argue that plaintiff cannot state a claim for a violation of the FDCPA because

the false affidavit was submitted to a state court, not to plaintiff. Defendants then argue that

*O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2007) stands for the

proposition that the FDCPA does not apply "to formal filings in state court." Def. Mem. at 14.

Defendants' position is faulty.

The FDCPA prohibits a debt collector from using "any *false*, deceptive, or misleading

representation or means in connection with the collection of any debt" (§1692e), and "[t]he use of

any *false representation* or deceptive means to collect or attempt to collect any debt or to obtain

information concerning a consumer" (§1692e(10)) (emphasis added). Clearly this includes false

statements and representations made to a debtor in a pleading.

As this Court found in *Matmanivong,* the FDCPA applies to collection actions. The Supreme Court held that the FDCPA applies to attorneys engaged in collection litigation. *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995). Numerous other courts have held that false representations in judicial proceedings can, or do, violate the FDCPA. In *Jenkins v. Centurion Corp.,* 07 C 3838, 2007 U.S. Dist. LEXIS 85218 (N.D. Ill. Nov. 15, 2007), plaintiffs filed suit alleging that defendants' state-court collection action violated the FDCPA. This Court held that a plaintiff "can maintain a cause of action under the FDCPA by alleging violations of the FDCPA in the state-court complaint." *Id* at *6. This Court rejected the notion that state-court filings are not actionable under the FDCPA. *Lee v. Javitch, Block & Rathbone, LLP*, 484 F.Supp.2d 816 (S.D. Ohio 2007) held that the consumer stated a viable FDCPA claim for a false statement in an affidavit attached to a state-court collection complaint.[4]

Even if one agrees with defendants' characterization of *O'Rourke*, the representations here were made to plaintiff herself. The focus of an FDCPA violation is on the effect on the debtor. Plaintiff was served with the affidavit. Filing suit against someone on a purported debt is clearly intended to elicit payment from the individual of that purported debt.

---

[4] *See also, e.g.*, *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007) (rejecting argument that "any statements made during the course of judicial proceedings" were exempt from FDCPA liability); *Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432 (6th Cir. 2006) (same); *King v. Resurgence Financial, LLC.,* 08 C 3306 (N.D. Ill. Feb. 9, 2009); *Guevara v. Midland Funding NCC-2 Corp.*, 07 C 5858, 2008 U.S. Dist. LEXIS 47767 (N.D. Ill. June 20, 2008)*; Foster v. Velocity Invs., LLC,* 07 C 0824 and 07 C 2989, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill. Aug. 24, 2007); *Owens v. Howe*, 04cv152, 2004 U.S. Dist. LEXIS 22728, *47 (N.D. Ind. 2004) (complaint); *Miller v. Wolpoff & Abramson*, 321 F.3d 292 (2nd Cir. 2003) (complaint); *Tomas v. Bass & Moglowski, P.C.*, 99-C-277-S, 1999 U.S. Dist. LEXIS 21533 (W.D. Wisc. June 29, 1999) (summons and complaint); *Jacquez v. Diem Corp.*, CV-02- 0500-PHX-JAT, 2003 U.S. Dist. LEXIS 8333 (D. Ariz. Feb. 20, 2003) (writ of garnishment).

Defendants cite *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007) for the proposition that pleading deficiencies do not violate the FDCPA. Defendants' reliance is misplaced.

In *Beler*, after a judgment was entered against the plaintiff, the defendant law firm caused a citation to discover assets (similar to a supplemental proceeding) to be served on plaintiff's bank. *Beler*, 480 F.3d at 472. The citation advised the bank that exempt assets should not be released to the law firm. The plaintiff's bank, not knowing whether the funds in the account were exempt or not, froze the account. *Id*. In fact, the plaintiff's account contained solely exempt assets and, after 23 days, the bank released the account. *Id*. The plaintiff claimed that the attempt to seize exempt assets violated §1692f of the FDCPA, which prohibits using "unfair or unconscionable means" to collect debts. 15 U.S.C. §1692f. In rejecting the plaintiff's argument, the Seventh Circuit stated that the defendant law firm had not in fact violated either the federal Social Security Act or Illinois law with respect to claiming exemptions and, even if it had, §1692f is not an enforcement mechanism for other rules of state and federal law.

> This is not a piggyback jurisdiction clause. If the Law Firm violated the Social Security Act, that statute's rules should be applied. Likewise if the Law Firm violated Illinois law, *Section 1692f* does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $ 75,000 and the parties are not of diverse citizenship. *Id*. at 474. *(*Emphasis added*)*.

*Beler* is inapposite here because plaintiff is not claiming that defendants violated any law other than the FDCPA. In any event, *Beler* only addressed claims under §1692f (unfair practices), not §1692e (false statements). *Beler*, 480 F.3d at 474.

## VI.    PLAINTIFF DOES NOT CONTEND THAT DEFENDANTS HAVE A DUTY TO PRODUCE DOCUMENTS

In another move to shift the focus from plaintiff's actual claim, defendants assert that plaintiff's complaint is "based on the false premise that a creditor must present all proof of its right to collect a debt at the time of filing a collection action."  Def. Mem. at 8. That is not plaintiff's claim.  Plaintiff complains that defendants submitted a false affidavit.  The affidavit is false because it represents that defendants have business records, when they do not.  Sowell falsely stated that he had reviewed documents when he had not.  The accuracy of the only records that defendants have access to is disclaimed by the business that actually generated the record.

Defendants do not need to submit an affidavit in connection with the filing of a collection lawsuit.  They do it because it is an efficient mechanism to get judgments in the frequent cases where the defendant defaults.  They also submit the false affidavit so that the debtor will believe that defendants will be able to prove their case at trial.   Whether defendants, if challenged, will actually be able to prove a case at trial is highly speculative, given the FTC Report and its description of the nature of the documentation that defendants receive when they purchase bad debts.  However, plaintiff does not contend that defendants' violation of the FDCPA is that they do not have the documents to prove the case, but that the affiant falsely states that they do. Although defendants do not violate the FDCPA by filing a case without attaching or having access to necessary proof, they cannot lie about the nature of the proof they have.  Defendants' affidavits lie about the documents that they do not have and cannot feasibly secure in every collection case. Defendants submit affidavits under the business records exception to hearsay signed by a robosigner where the accuracy of any records he reviewed, if at all, was disclaimed

15

by the entity that generated the records. However, plaintiff's claim is *not* that defendants failed to provide its proof in the first instance.

Defendants mischaracterize plaintiff's claim in order to shoehorn it into the cases they cite. The attempt fails because the cases are inapposite. Thus, the claims in *Harvey v. Great Seneca*, 453 F.3d 324 (6th Cir. 2006), *Nickoloff v. Wolpoff & Abramson*, 511 F.Supp. 2d 1043 (C.D. Cal. 2007) and *Clark v. Unifund*, 2007 WL 1258113 (W.D.Pa. 2007) are that defendant filed a lawsuit (*Harvey, Clark)* or arbitration (*Nickloff*) without having the "immediate means" to prove the debt in violation of the FDCPA. The claim in *Krawczyk v. Centurian Capital Corp.*, No. 06 CV 6273, 2009 WL 395458 (N.D. Ill. Feb. 18, 2009) was that defendant attached an affidavit without attaching the documents. *Deere v. Javitch, Block & Rathbone LLP*, 413 F. Supp. 2d 886, 890 (S.D. Ohio 2006) also alleged a failure of proof and filing and did not contain allegations that the state-court collection complaint contained a false representation. None of these cases alleges that the affidavit was signed by a robosigner who stated that he had business records when he did not or where the original creditor disclaimed the accuracy of the minimal information furnished.

Defendants cite *Heintz v. Jenkins*, 514 U.S. 291 (1995) for the unremarkable proposition that a lawyer is not liable under the FDCPA for "taking an action that cannot legally be taken" for bringing a lawsuit that was ultimately unsuccessful. *Heintz* addressed the question whether the FDCPA applies to a lawyer. It did not address whether a debt collector violates the FDCPA if it files suit without proof.

*Gonzalez v. Erskine*, No. 08-CV-20893, 2008 WL 6822207 (S.D. Fla. Aug. 7, 2008) dismissed the FDCPA complaint because the plaintiff failed to allege that the defendant did not

know the affidavit was false.  Here, the complaint alleges with detail the defendants' knowledge that they submitted affidavits signed by a robosigner falsely alleging that the affidavit was based upon business records that defendants knew did not exist.

## VII.  DEFENDANTS' MISREPRESENTATIONS ARE MATERIAL

Defendants argue that "the Affidavit does not constitute a false, misleading or deceptive representation because at the pleading stage of a collection action, the terms by which LVNV acquired Plaintiff's debt are not material"  Def. Mem. at 13.  Defendants' analysis contorts the requirements of the FDCPA by focusing on the debt buyer, rather than the effect that the debt buyer's statements have on the consumer.

A false or misleading statement is material if it has "the ability to influence a *consumer's* decision," *O'Rourke v. Palisades Acquisition XVI, LLC,* 635 F.3d 938, 942 (7th Cir.2011) (emphasis in original).  *Lox v. CDA, Ltd.*, *supra*, amplifies this standard by noting that a statement in a collection letter that attorney's fees could be awarded in a collection lawsuit, when fees were not available under Illinois law, was a material violation of the FDCPA because it "would have undoubtedly been a factor in his decision-making process, and very well could have led to a decision to pay a debt that he would have preferred to contest."

A representation that a debt collector has business records with which to prove its case, when it does not, is materially misleading. The debt collector is not entitled to lie in order to get a consumer to pay a debt that she would have preferred to contest.

An affidavit claiming personal knowledge that a debt collector owns a debt could clearly impact a debtor's decision-making process.  A debtor may not have a clear memory of each and every debt she incurred.  Further, a debtor has no personal knowledge as to who, other than the original

creditor, owns a debt and is entitled to a certain amount. Seeing a sworn affidavit -- which indicates that there is a witness against her -- testifying that she does in fact owe this debt collector a certain sum of money could be enough to make the unsophisticated consumer assume that the debt collector is correct and simply pay the debt rather than go through with court proceedings. A debtor may be scared to claim she does not owe a debt she does not remember incurring, or to dispute a claim by someone with whom she has never even done business, since there is this sworn statement that based upon another individual's knowledge she does in fact owe the debt.

The fact that an affidavit is submitted to a court in a collection case is certainly a factor in any debtor's decision-making process and could lead a debtor to pay a debt she would have preferred to contest. A debtor is in a position of weakness in a collection lawsuit. Few debtors have records to dispute a debt buyer's statement of the amount of a debt, especially when faced with an affidavit stating "we have the records and you owe $x amount."

The cases defendants rely upon to show that their filing of a false affidavit is not material are not compelling. First of all, it is important to note that the FTC disputes the Seventh Circuit's conclusion in *Hahn v. Triumph P'hips LLC*, 552 F. 3d 755, 757-58 (7th Cir. 2009) that the fact that debt collectors misstate the breakdown between principal and interest is not material. FTC Report at 36 ("Most significantly, debt buyers often did not receive the information needed to break down outstanding balances on accounts into principal, interest, and fees. The FTC has said that debt collectors should be required to include this information in validation notices to assist consumers in determining whether the amount owed is correct."). *Krawczyk v. Centurian Capital Corp.*, No. 06 CV 6273, 2009 WL 395458 (N.D. Ill. Feb. 18, 2009) did not address the question of materiality. Further, as mentioned above, the claim in *Krawczyk* was that submitting an affidavit without

attaching the documents relied upon was a violation of the FDCPA. That is not the claim here.

**VIII.    CONCLUSION**

For these reasons, plaintiff requests that this Court deny defendants' motion to dismiss.


Respectfully submitted,


s/Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

**CERTIFICATE OF SERVICE**

      I, Daniel A. Edelman, hereby certify that on March 8, 2013, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system and notification of such filing was sent to the following parties:

Gary S. Caplan
gcaplan@reedsmith.com

David A. Maas
dmaas@reedsmith.com

s/ Daniel A. Edelman
Daniel A. Edelman