UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA CASSO, on behalf of plaintiff and class, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 12-CV-7328 ) ) Judge John W. Darrah |
| LVNV FUNDING, LLC; RESURGENT CAPITAL SERVICES LP; and ALEGIS GROUP LLC, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Pamela Casso, brought this action against Defendants, LVNV Funding, LLC ("LVNV"), Resurgent Capital Services LP ("Resurgent"), and Alegis Group LLC ("Alegis") (collectively, "Defendants"), for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(e). Casso now moves for class certification. For the reasons stated below, Casso's Motion is granted.

### BACKGROUND

Casso is an individual who resides in Illinois. (Am. Compl. ¶ 5.) LVNV is a Las Vegas company that acquires allegedly defaulted debt and attempts to collect by filing lawsuits. (*Id*. ¶¶ 6-7, 9.) Resurgent is a South Carolina limited partnership that operates a collections agency. (Id. ¶¶ 16-17.) Alegis is a South Carolina limited liability company and the sole general partner of Resurgent. (*Id*. ¶ 21.) LVNV files more than five-thousand collection cases per year in Illinois courts. (*Id*. ¶ 15.) All collection actions on debts purchased or otherwise acquired by LVNV are undertaken by Resurgent on LVNV's behalf. (*Id*. ¶ 23.)

On November 14, 2011, LVNV filed a lawsuit in the Circuit Court of Cook County, Illinois, to collect a credit card debt allegedly owed by Casso. (*Id.* ¶¶ 29-30.) Attached to the complaint was an affidavit sworn by Matthew Sowell (the "Sowell Affidavit"), then an employee of Resurgent. (*Id.* ¶¶ 32-33.) Sowell's affidavit states, *inter alia*:

   a. "[T]he information below is true and correct to the best of my information and belief based on [LVNV]'s business records."

   b. "This information was regularly and contemporaneously maintained during the course of [LVNV]'s business."

   c. "In the ordinary course of business, [LVNV] regularly acquires revolving credit accounts, installment accounts, service accounts and/or other credit lines. The records provided to [LVNV] have been represented to include information provided by the original creditor or its successor in interest. Such information includes the debtor's name, social security number, account balance, the identity of the original creditor and the account number."

   d. "Based upon the business records maintained on [Casso's account] . . . the Account is the result of the extension of credit to [Casso] by Citibank on or about 4/16/2007 (the "Date of Origination")."

   e. Upon assignment of the account, LVNV acquired "the right to collect the purchased balance owing of $2,440.48 plus any additional accrued interest."

(Id. ¶ 36; Pl.'s Mot., Appendix B.) However, Casso alleges that Sowell did not review business records prior to signing the affidavit and, furthermore, that LVNV does not have business records indicating Casso's debt resulted from a loan on April 16, 2007, or that the amount owed is $2,440.48. (*Id.* ¶¶ 34, 37-38.)[1]

---

[1] Unlike a motion to dismiss, review of a motion for class certification does *not* require a presumption that all well-pleaded allegations are true. In fact, "a judge should make whatever factual and legal inquiries are necessary under [Federal Rule of Civil Procedure] 23." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

2

LVNV's agreement with Citibank (the "Agreement") includes several provisions limiting Citibank's representations and warranties. In Section 3.3 of the Agreement, Citibank represents only that "the current balance on the [account purchased by LVNV] is $100 or more." (*Id*. ¶ 41.) The Agreement provides that LVNV is a "sophisticated investor" employing "its own independent expert evaluations of the nature, validity, collectability, enforceability and value of the Accounts" and that LVNV "is not acting in reliance on any representation by [Citibank], except those listed in Section 3.3." (*Id*. ¶ 44.) The only remedy provided in the event that one of Citibank's limited warranties or representations is breached is that, for a period of 180 days, Citibank must reimburse the purchase price of the account, subtracting any amounts collected. (*Id*. ¶ 42.) Casso argues that, because the purchase price of these accounts is quite small, any remedy would also be quite small, making such warranties virtually meaningless. (Pl.'s Reply at 4.) Casso further argues that these warranties are intentionally modest "because Citigroup has limited or flawed documentation of the credit card debts it owned." (*Id*.)

## LEGAL STANDARD

A plaintiff seeking class certification must show: (1) joinder of all potential class members is impracticable ("numerosity"); (2) there are common questions of law or fact ("commonality"); (3) the class representative's claims are typical of the rest of the class ("typicality"); and (4) the class representative adequately and fairly represents the class ("adequacy"). Fed. R. Civ. P. 23(a); *see also Kress v. CCA of Tennessee, LLC*, 694 F.3d 890, 892-93 (7th Cir. 2012). In addition, the suit "must also fit into one of the three categories described in subdivision (b) [of Federal Rule of Civil Procedure 23]." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Failing to fulfill either of these

conditions bars certification, whereas fulfilling both categorically entitles certification. *Id*. at 398-99.

Rule 23(b) allows a class action to be maintained when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that class action is superior to other available methods for fairly and adequately adjudicating the controversy." Although class-certification analysis requires a rigorous analysis, the merits of the case should only be considered to the extent that they are necessary to determine whether the requirements of Rule 23 have been met. *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). The district court has broad discretion in determining whether to certify a class. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

**ANALYSIS**

Casso seeks to certify the class of "(a) all natural persons with Illinois addresses (b) to whom [LVNV] provided an affidavit in the form represented by [the Sowell Affidavit] (c) concerning a debt that was the subject of an 'as is' disclaimer" on or between September 13, 2011, and October 3, 2012." (Am. Compl. ¶ 58.) Casso contends that plaintiffs meeting this class description share a common claim that LVNV violated the FDCPA by engaging in "deceptive collection practices." (Am. Compl. ¶54.) In pertinent part, the FDCPA provides that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (2) the false representation of . . . the character, amount, or legal status of any debt; . . . [or] (10) [t]he use of any false representation or deceptive means to collect any debt or to obtain information concerning a consumer."

4

15 U.S.C. 1692e. As the parties do not dispute that LVNV is a "debt collector," the relevant question is whether LVNV's practices are among those prohibited by the FDCPA.

In his deposition, Sowell testified to the process of verifying affidavits while he was an operations specialist employed by Resurgent. Law firms engaged in collection lawsuits on behalf of LVNV would electronically request affidavits from Resurgent. (Am. Compl., Appendix E at 10:4-9.) The information submitted by the law firm was then merged into an affidavit template comparing it, side by side, with the information in LVNV's system of records, known as Account Master Customer Service ("AMCS"). (*Id*. at 10:21-11:14.) Any inaccuracies between the two sets of information were indicated by a red line linking them on a computer screen. (*Id*. at 11:14-18.) If Sowell observed a red line, he shredded the document; if not, he signed the affidavit and had it notarized and sent the affidavit back to the law firm for use in collection actions. (*Id*. at 11:19-12:1.)

The information contained in AMCS was input as it was received from the original creditor. (*Id*. at 13:11-15.) Although it is possible to update information within AMCS, Sowell never personally updated account information. (*Id*. at 17:16-21.) Furthermore, Sowell never checked original account information to make sure data was input correctly. (*Id*. at 52:9-19).

Casso argues that an affidavit of the type submitted by Sowell in her case, prepared by an affiant with no knowledge of the underlying accounts, violates Section 1692e of the FDCPA. (Pl.'s Renewed Mot. for Class Certification ¶¶ 16-17.) Such affidavits "mislead[] an unsophisticated consumer into believing it would be futile to defend in a debt collection lawsuit." (Pl.'s Reply at 2.) Defendants argue only that Casso has failed to satisfy the commonality and predominance requirements of Rules 23(a)(2) and (b)(3).

*Commonality*

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The claims require a "common contention," the resolution of which will allow the court to dispose of the claims "in one stroke." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012) (quoting *Falcon*, 457 U.S. at 157).

Defendants argue that, in order to determine whether an affidavit submitted to any plaintiff was fraudulent, a fact-finder would at least have to determine what records were in AMCS at the time the affidavit was prepared, what records the affiant reviewed, and the accuracy of the account information provided by Citibank. These questions are more appropriately addressed in the predominance inquiry undertaken below. For purposes of showing commonality, Casso contends that it was a standardized practice for affiants to have no personal knowledge of the accuracy of the debts to which they attested. Should this allegation prove true, resolving whether this practice alone violates the FDCPA could dispose of the claims "in one stroke."[2] Therefore, Casso's proposed class satisfies the commonality requirement of Rule 23(a)(2).

*Predominance*

However, "[e]ven if Rule 23(a)'s commonality requirement may be satisfied by [the] shared experience [of receiving affidavits like those prepared by Sowell], the predominance

---

[2] Defendants argue in a footnote that "[v]arious courts have rejected FDCPA claims based solely on the theory that a creditor relied on electronic account information from the prior creditor when preparing an affidavit in a collection action." (Defs.' Response at 10, n. 2.) However, despite any similarities, neither case is controlling.

criterion is far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). A common question can be outweighed by additional, significant questions unique to individual class members. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (quoting *Amchem*, 521 U.S. at 623). Yet, predominance is not lacking simply because there are "more individual issues, regardless of relative importance." *Parko*, 739 F.3d at 1085. Instead, the proper inquiry is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

As set out above, Defendants argue that individual issues would predominate, requiring examination of each class member's account information. However, the cases Defendants cite are distinguishable. First, Defendants discuss this Court's ruling in *Thompson v. Spinelli*, No. 04 8224, 2005 WL 2483376 (N.D. Ill. Oct. 5, 2005). In that case, the plaintiffs sought to certify a class of consumers who had received collection letters demanding unauthorized credit card processing fees. The class was not certified because the plaintiffs failed to submit any documentation demonstrating the fee was unauthorized, and only posited that such a fee was "highly unlikely" to be included in any agreement. Accordingly, the account of every recipient of one of the defendants' collections letter would need to be examined to determine whether a credit card processing fee had been authorized. The instant case does not necessarily require such an examination. If the standardized process of affiants signing affidavits with no personal knowledge of underlying accounts is found to violate the FDCPA, recipients of such affidavits may prevail regardless of the other details of their accounts.

Defendants also rely on *Foreman v. PRA III, LLC*, No. 05 C 3372, 2007 WL 704478, at *12-13 (N.D. Ill. Mar. 5, 2007). Defendants assert that *Foreman* is particularly relevant because it also involved affidavits signed by affiants with no personal knowledge of an account's

7

underlying debt totals.  However, as Casso notes in her Reply, the affiant in *Foreman* never testified that she did not compare any records to the system records of the debt collection agency. This is in stark contrast to Sowell's testimony that he "would always *just* verify [the data received from a law firm] against the data that's in [LVNV's] system of records."  (Am. Compl., Appendix E at 52:17-19 (emphasis added).)  Casso's allegation that Resurgent affiants did not consult records outside AMCS is susceptible to classwide resolution without the type of individual analysis required in *Foreman*.

Casso's burden at this stage is not to prove the elements of FDCPA violations, but to demonstrate that the elements are "*capable of proof* at trial through evidence that is common to the class rather than individual members." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 818 (7th Cir. 2012).  Here, Casso has demonstrated that Resurgent's affidavits by their nature may be shown to violate the FDCPA; in which case, all class member's claims could be resolved.  This issue predominates and, therefore, satisfies Rule 23(b)(3).

## CONCLUSION

For the reasons stated above, Casso's Motion for Class Certification [70] is granted.

Date:  _____12/10/14_____                   _____
                                                JOHN W. DARRAH
                                                United States District Court Judge